86 So.2d 389

**J. Lee HANCOCK et al.**

v.

**Rosa Allie Foster FRAZIER, Ex'x, et al.**

8 Div. 849.

Supreme Court of Alabama.

March 22, 1956.

W. O. Weeks, Scottsboro, for appellants.

Jas. M. Proctor, Scottsboro, and Hugh Reed, Jr., Centre, for appellees.

PER CURIAM.

The only question in this case is one of fact. That is, whether the instrument admitted to probate in the probate court was executed by Otis B. Hancock as his will. A bill was filed in equity to contest the will under section 64, Title 61, Code.

At the outset it is important to know where is the burden of proof. When there is a contest in the probate court under section 52, Title 61, Code, the burden of proof is on the proponent and remains with him throughout to prove to the reasonable satisfaction of the court or jury trying the issue that the instrument was duly executed and is valid. Mindler v. Crocker, 245 Ala. 578, 18 So.2d 278.

We have recently considered the question where there was a contest in equity under section 64, Title 61, Code, with a jury trial. Smith v. Bryant, 263 Ala. 331, 82 So.2d 411, 414. There referring to our previous cases in such a suit, it is stated that the proper procedure is that the respondent, who is in effect the proponent, should first introduce the proceedings admitting the will to probate in the probate court, citing 57 Am.Jur. 608, section 925. It is also there stated that complainant, who is the contestant, "should then introduce testimony on which the alleged invalidity of the will is based. The respondent should then introduce the rebuttal testimony, if any. The respondent should then make the opening argument." Some of our older cases are cited by the Court. Mathews v. Forniss, 91 Ala. 157, 8 So. 661; McCutchen v. Loggins, 109 Ala. 457, 19 So. 810, 812. It means, as we said in McCutchen v. Loggins, that in such a suit as this "those who claim under the probated will must show

affirmatively its validity, and become the actors". But we interpret Smith v. Bryant, supra, to mean that this is prima facie sustained by the proceedings in the probate court admitting the will to probate. The duty, not a shifting of the burden of proof, is then upon complainants to introduce evidence on which it is claimed the "alleged invalidity of the will is based". We further take that to mean that when complainants introduce such evidence from which its invalidity may be inferred, the judgment in the probate proceedings will have lost its value as evidence, for the trial is de novo. It is also said in McCutchen v. Loggins, supra, that when complainants showed their interest and right to contest in equity "the burden was placed upon the respondents to affirm and maintain the validity of the probated will. Complainants have no standing in the chancery court, except as contestants".

In both Smith v. Bryant, supra, and McCutchen v. Loggins, supra, the contest was tried in the equity court with a jury under sections 64 to 67, Title 61, Code. The burden of proof is the same of course whether it is tried with a jury or without one. The procedure outlined in Smith v. Bryant does not prescribe the course to be pursued in taking the depositions of witnesses prior to trial. There is no rule of procedure as to when that should be done. When the trial comes on to be had on testimony, then to be taken in open court, the procedure is outlined in that case. When it is based on depositions, without a jury as in this case, counsel must prepare notes of the evidence which has been taken and which they wish to use. Equity Rule 57, Code 1940, Tit. 7 Appendix. The court in considering the case should then apply the rule fixing the burden of proof as outlined in McCutchen v. Loggins, supra. Section 67, Title 61, further provides that on the trial before the jury, or hearing before the circuit judge on a contest in equity, the testimony of the witnesses which had been reduced to writing by the judge of probate according to section 42, Title. 61, is to be considered by the judge or jury. That should be shown in the note of testimony, when a note is necessary. But on such con-

test the judgment in the probate court has no probative value, and only serves to give direction to the order of procedure in the circuit court in equity and support for equity jurisdiction.

The respondents here, claiming under the disputed will, have the burden on such contest as this to prove to the reasonable satisfaction of the court that Otis Hancock did sign the will propounded for probate and did cause it to be attested by two witnesses who subscribed their names thereto in the presence of the testator. Section 24, Title 61, Code.

The instrument in question is very short in form and bears date of July 8, 1950. It bequeaths all of decedent's property to his wife Mary Ethel Hancock. There was also produced another short instrument in the form of a will bearing the signature of Mary Ethel Hancock, with the same date, bequeathing all her property to her husband. These instruments indicate an absence of form usually observed in drafting wills by skilled draftsmen. Both wills appear to be witnessed by the same persons, who were the sister and brother-in-law of Mary Ethel Hancock, viz., Rosa Allie Foster Frazier and her husband Arthur C. Frazier. Otis Hancock died February 28, 1951, and his wife died July 4, 1951. The document in question was admitted to probate as decedent's will without contest in the probate court on March 30, 1951.

The bill in this case was filed April 11, 1951, while Mary Ethel Hancock was still living; but no testimony was taken before she died. The complainants are brothers and sisters of Otis Hancock. He left no child or children or their descendants, no father or mother, and therefore complainants would be heirs and distributees of his estate, if he had died intestate. Section 1, Title 16, Code. Not having contested in the probate court, complainants had a right to do so in equity. Section 64, Title 61, Code.

The evidence shows that decedent had a prosperous mercantile business; that he and his wife jointly owned the storehouse in which he did business. There were dwell-

ing apartments on the second floor of the storehouse. He and his wife lived in one, another was occupied by Mr. and Mrs. Leland Jordan (their best friends), and the third by Mr. and Mrs. Sumner (nephew of Otis Hancock).

The Fraziers, witnesses to the will, testified that Otis Hancock and Mary Ethel Hancock came to their home and had supper with them on the night of July 8, 1950. Otis Hancock and his wife said they each wanted to make a will. After supper they discussed it and stated what they wanted in the wills. The Fraziers had a typewriter at home and Mary Ethel Hancock got some paper and wrote the two documents—one as the will of Otis Hancock and other as hers. These documents were identified. The evidence of the Fraziers was that Otis Hancock and his wife each separately signed one of the instruments as a will in the presence of the Fraziers and it was witnessed by them, each signing as such witness in the presence of the testator and in the presence of each other.

There is much proof corroborating both contentions. Mr. and Mrs. Jordan, mentioned above, testified that both wills were exhibited to them by the Hancocks soon afterwards while they were visiting in the Hancock apartment. Decedent's bankers and other business friends, who were wholly disinterested, testified that the signature to his purported will was in the handwriting of Otis Hancock. The most important evidence against its validity was the testimony of Dr. C. J. Rehling, who was shown to be thoroughly competent and an expert handwriting technician. There were introduced in evidence various documents containing the name of Otis Hancock with proof that they were his genuine signatures. Section 421, Title 7, Code, changes the common law on that subject. Dr. Rehling gave his opinion that the signature to the purported will was not in the same handwriting as those shown to him to be genuine. He gave extensive detail of a technical sort illustrating his testimony.

In the case of Smith v. Young, 134 Miss. 738, 99 So. 370, 372, 35 A.L.R. 69, there is a discussion of the relative value of the analysis of handwriting by an expert technician, having photographed the signatures, as compared with the testimony of bankers and others familiar with his signature by frequent business transactions, with much favor given to the latter. One witness stated that "he recognized the signature of * * * just as he recognized the face of counsel * * *; that the face would be impressed upon his mind, though he could not tell" its features in detail. It is not the detail of appearance that is so well remembered, and which could hardly be recalled except for some conspicuous characteristic. One could remember and recognize the face of a friend without remembering the color of his eyes or hair or other details.

It is outstanding in this case that *there was not a single disinterested person who knew Otis Hancock in his lifetime and* was familiar with his signature, who testified that the disputed *signature to the purported will was not, in his opinion, that of Otis Hancock*. This circumstance was also emphasized in the case of Smith v. Young, supra. On the other hand, there were several such persons, including decedent's bankers, who testified that the signature was, in their opinion, in his handwriting. As in the case of Smith v. Young, we have before us in the original document in question and those others with the genuine signature of decedent, as well as the photographs of some of them made by Dr. Rehling. We have carefully examined them with a magnifying glass, and note the details to which Dr. Rehling testified. But there is such an overall resemblance, though there are differences, that the picture is not too confusing.

True, a number of witnesses, to whom we will refer as the Gadsden party, testified to going to the Otis Hancock apartment on the night of July 8, 1950 and being there at the identical time, according to the Fraziers' testimony that the Hancocks were at their place eating supper and making the will. These witnesses were testifying from memory as to what they did three and a half years before without any record fixing the date, when it might have been the second Saturday night after July 4th instead of the

first Saturday night, or it might even have been 1949 instead of 1950. Both Otis Hancock and his wife were dead and of course could not offer explanation. Mrs. Hancock was a party to the forgery if such it was; but it seems unlikely she would have fixed the date of the forged instrument at a time when those persons were visiting in their apartment.

This case was tried in the circuit court by the judge without a jury and on evidence taken by deposition before the register, not in open court. Therefore, we must decide the issue without giving weight to the finding of the trial judge. Title 13, section 17, Code. The preponderance of the evidence so greatly supports the conclusion that the signature of Otis B. Hancock is genuine as it appears on the document in question, that we are reasonably satisfied of it. The judgment should be affirmed.

The foregoing opinion was prepared by FOSTER, Supernumerary Justice of this Court, while serving on it at the request of the Chief Justice under authority of Title 13, section 32, Code, and was adopted by the Court as its opinion.

Affirmed.

LIVINGSTON, C. J., and LAWSON, GOODWYN and MERRILL, JJ., concur.